# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** AIR & LIQUID SYSTEMS CORPORATION (sued as
*(AVISO AL DEMANDADO):* successor-by-merger to BUFFALO PUMPS, INC.), et
al. [SEE ADDITIONAL DEFENDANTS LIST]

**YOU ARE BEING SUED BY PLAINTIFF:** ROBERT FINAMORE and REBECCA
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* FINAMORE

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*
CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 13 2013

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of Los Angeles<br>111 North Hill Street<br>Los Angeles, California 90012 | CASE NUMBER<br>*(Número del Caso):*<br>BC512112 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: JENNIFER L. BARTLETT
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
SIMON GREENSTONE PANATIER BARTLETT, PC
301 E Ocean Blvd., Suite 1950, Long Beach, CA 90802     562-590-3400

DATE: John A. Clarke               Clerk, by CRISTINA GRIALVA               , Deputy
*(Fecha)*                          *(Secretario)*                            *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

[SEAL]

JUN 13 2013

3. ☑ on behalf of *(specify):* Foster Wheeler Energy Corporat

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*
Westlaw Doc & Form Builder™

SUM-200(A)

| SHORT TITLE: FINAMORE v. AIR & LIQUID SYSTEMS CORPORATION | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

AIR & LIQUID SYSTEMS CORPORATION (sued as successor-by-merger to BUFFALO PUMPS, INC.);
AMCORD, INC. (sued individually and as successor-in-interest to RIVERSIDE CEMENT CO.);
ARMSTRONG INTERNATIONAL, INC.;
BORG WARNER CORPORATION by its successor-in-interest BORG-WARNER MORSE TEC, INC.;
CALIFORNIA PORTLAND CEMENT COMPANY;
CBS CORPORATION (a Delaware Corporation) f/k/a VIACOM. INC. (sued as successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT);
CIRRUS ENTERPRISES, LLC (sued individually and as successor-in-interest to E. V. ROBERTS AND ASSOCIATES, INC. and EVRA, INC.);
CLA-VAL CO.;
CRANE CO. (sued individually and as successor-in-interest to COCHRANE CORPORATION AND CHAPMAN VALVE COMPANY);
CRANE ENVIRONMENTAL, INC. (sued individually and as successor-in-interest to COCHRANE CORPORATION);
CYPRUS AMAX MINERALS COMPANY (sued as successor to SIERRA TALC COMPANY and UNITED TALC COMPANY)
CYTEC INDUSTRIES, INC. (sued individually and as successor-in-interest to AMERICAN CYANAMID);
DANA COMPANIES LLC (sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY);
DAP PRODUCTS, INC.;
DEXTER HYSOL AEROSPACE, LLC f/k/a DEXTER HYSOL AEROSPACE, INC. (sued as success-by-merger with HYSOL CORPORATION);
ELLIOTT TURBO MACHINERY COMPANY a/k/a ELLIOTT COMPANY;
FLOWSERVE US, INC. (sued as successor to EDWARD VALVE, INC.);
FMC CORPORATION (sued individually and as successor-in-interest to PEERLESS PUMP COMPANY, and also as successor-in-interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY);
FORD MOTOR COMPANY;
FOSTER WHEELER ENERGY CORPORATION;
GARDNER DENVER, INC.;
GENERAL ELECTRIC COMPANY;
GENUINE PARTS COMPANY d/b/a NATIONAL AUTOMOTIVE PARTS ASSOCIATION (aka NAPA) and also d/b/a as RAYLOC, a division of NAPA);
GEORGIA-PACIFIC LLC, f/k/a GEORGIA-PACIFIC CORPORATION;
GOODRICH CORPORATION (sued individually and as successor-in-interest to THE B.F. GOODRICH COMPANY and SIMMONDS PRECISION ENGINE SYSTEMS);
THE GOODYEAR TIRE & RUBBER COMPANY;
HARCO LABORATORIES, INCORPORATED;
HENKEL CORPORATION (sued individually and as successor-in-interest to DEXTER HYSOL AEROSPACE, INC.);
HENRY COMPANY;
W.W. HENRY COMPANY;
HOBART BROTHERS COMPANY;
HONEYWELL INTERNATIONAL, INC. (f/k/a ALLIED-SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION);

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

Westlaw Doc & Form Builder™

**SUM-200(A)**

| SHORT TITLE: FINAMORE v. AIR & LIQUID SYSTEMS CORPORATION | CASE NUMBER: |
|---|---|

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

HOPEMAN BROTHERS INC.;
IMO INDUSTRIES, INC. (sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and also as successor-in-interest to C. H. WHEELER MANUFACTURING COMPANY);
INGERSOLL RAND COMPANY (sued individually and as successor-in-interest to TERRY STEAM TURBINE COMPANY);
ITT CORPORATION, f/k/a ITT INDUSTRIES, INC. (sued individually and as successor-in-interest to FOSTER ENGINEERING COMPANY);
J.T. THORPE & SON, INC.;
KAISER GYPSUM COMPANY, INC.;
THE LINCOLN ELECTRIC COMPANY;
LINDE NORTH AMERICA, INC. d/b/a THE BOC GROUP (sued individually and as successor-in-interest to AIRCO WELDING PRODUCTS);
M. SLAYEN AND ASSOCIATES, INC.;
McNALLY INDUSTRIES, LLC (sued individually and as successor-in-interest to NORTHERN FIRE APPARATUS COMPANY);
MEADWESTVACO CORPORATION f/k/a WESTVACO;
METROPOLITAN LIFE INSURANCE COMPANY;
MILLER ELECTRIC MFG. CO. a wholly owned subsidiary of ILLINOIS TOOL WORKS, INC.;
PARKER AEROSPACE GROUP d/b/a STRATOFLEX PRODUCTS, a Division of PARKER HANNIFIN CORPORATION;
PARKER-HANNIFIN CORPORATION d/b/a STRATOFLEX PRODUCTS;
THE PEP BOYS - MANNY MOE & JACK OF CALIFORNIA;
PFIZER INC.;
PNEUMO ABEX LLC (sued as successor-in-interest to ABEX CORPORATION);
SHELL OIL COMPANY;
SOCO-WEST, INC. f/k/a Brenntag West, Inc. f/k/a Soco-Lynch Corporation (sued as successor-in-interest to Western Chemical & Manufacturing Co.);
STERLING FLUID SYSTEMS (USA), LLC f/k/a PEERLESS PUMP CO.;
SYD CARPENTER, MARINE CONTRACTOR, INC.;
UNION CARBIDE CORPORATION;
UNITED TECHNOLOGIES CORPORATION (sued individually and as successor-in-interest to PRATT & WHITNEY);
VELAN VALVE CORPORATION;
WARREN PUMPS, LLC (sued individually and as successor-in-interest to QUIMBY PUMP CO);
WEIR VALVES & CONTROLS USA, INC. f/k/a ATWOOD & MORRILL;
THE WILLIAM POWELL COMPANY;
and DOES 1-450

Page __1__ of __1__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Westlaw Doc & Form Builder™

1  JENNIFER L. BARTLETT, CA Bar No. 183154
   ROBERT A. GREEN, CA Bar No. 216116
2  STUART J. PURDY, CA Bar No. 239878
   TYSON B. GAMBLE, CA Bar No. 266677
3  **SIMON GREENSTONE PANATIER BARTLETT, P.C.**
   301 E. Ocean Blvd., Suite 1950
4  Long Beach, California 90802
   Telephone (562) 590-3400
5  Facsimile (562) 590-3412

6  JOHN M. CARON, CA Bar No. 130633
   **THE LAW OFFICE OF WORTHINGTON & CARON, P.C.**
7  273 W. 7th Street
   San Pedro, California  90731
8  Telephone (310) 221-8090
   Facsimile (310) 221-8095

9

10  Attorneys for Plaintiffs

11

12             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                 **FOR THE COUNTY OF LOS ANGELES**

14  **ROBERT FINAMORE and REBECCA**        Case No.   **BC512112**
    **FINAMORE**
15                                          THIS ACTION CONSTITUTES COMPLEX
                            Plaintiffs,     ASBESTOS LITIGATION – SUBJECT TO THE
16         vs.                              GENERAL ORDERS CONTAINED IN FILE NO.
                                            C 700000 – DEPT. 59
17  **AIR & LIQUID SYSTEMS**
    **CORPORATION** *(sued as successor-by-*  **COMPLAINT FOR PERSONAL INJURY –**
18  *merger to BUFFALO PUMPS, INC.)*;        **ASBESTOS (NEGLIGENCE; STRICT**
    **AMCORD, INC.** *(sued individually and as*  **LIABILITY; CONSPIRACY AND LOSS OF**
19  *successor-in-interest to RIVERSIDE*     **CONSORTIUM)**
    *CEMENT CO.)*;
20  **ARMSTRONG INTERNATIONAL,**
    **INC.**;
21  **BORG WARNER CORPORATION** *by*
    *its successor-in-interest BORG-WARNER*
22  *MORSE TEC, INC.*;
    **CALIFORNIA PORTLAND CEMENT**
23  **COMPANY**;
    **CBS CORPORATION** *(a Delaware*
24  *Corporation) f/k/a VIACOM, INC. (sued as*
    *successor-by-merger to CBS*
25  *CORPORATION (a Pennsylvania*
    *Corporation) f/k/a WESTINGHOUSE*
26  *ELECTRIC CORPORATION and also as*
    *successor-in-interest to BF*
27  *STURTEVANT)*;
    **CIRRUS ENTERPRISES, LLC** *(sued*
28  *individually and as successor-in-interest to*
    *E. V. ROBERTS AND ASSOCIATES, INC.*

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUN 13 2013

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy

1

1  *and EVRA, INC.);*
   **CLA-VAL CO.;**
2  **CRANE CO.** *(sued individually and as*
   *successor-in-interest to COCHRANE*
3  *CORPORATION AND CHAPMAN VALVE*
   *COMPANY);*
4  **CRANE ENVIRONMENTAL, INC.**
   *(sued individually and as successor-in-*
5  *interest to COCHRANE CORPORATION);*
   **CYPRUS AMAX MINERALS**
6  **COMPANY** *(sued as successor to SIERRA*
   *TALC COMPANY and UNITED TALC*
7  *COMPANY);*
   **CYTEC INDUSTRIES, INC.** *(sued*
8  *individually and as successor-in-interest to*
   *AMERICAN CYANIMID);*
9  **DANA COMPANIES LLC** *(sued*
   *individually and as successor-in-interest to*
10 *VICTOR GASKET MANUFACTURING*
   *COMPANY);*
11 **DAP PRODUCTS, INC.;**
   **DEXTER HYSOL AEROSPACE, LLC**
12 *f/k/a DEXTER HYSOL AEROSPACE, INC.*
   *(sued as success-by-merger with HYSOL*
13 *CORPORATION);*
   **ELLIOTT TURBO MACHINERY**
14 **COMPANY** *a/k/a ELLIOTT COMPANY;*
   **FLOWSERVE US, INC.** *(sued as*
15 *successor to EDWARD VALVE, INC.);*
   **FMC CORPORATION** *(sued*
16 *individually and as successor-in-interest to*
   *PEERLESS PUMP COMPANY, and also*
17 *as successor-in-interest to NORTHERN*
   *PUMP COMPANY f/k/a NORTHERN*
18 *FIRE APPARATUS COMPANY);*
   **FORD MOTOR COMPANY;**
19 **FOSTER WHEELER ENERGY**
   **CORPORATION;**
20 **GARDNER DENVER, INC.;**
   **GENERAL ELECTRIC COMPANY;**
21 **GENUINE PARTS COMPANY** *d/b/a*
   *NATIONAL AUTOMOTIVE PARTS*
22 *ASSOCIATION (aka NAPA) and also d/b/a*
   *as RAYLOC, a division of NAPA);*
23 **GEORGIA-PACIFIC LLC,** f/k/a
   GEORGIA-PACIFIC CORPORATION;
24 **GOODRICH CORPORATION** *(sued*
   *individually and as successor-in-interest to*
25 *THE B.F. GOODRICH COMPANY and*
   *SIMMONDS PRECISION ENGINE*
26 *SYSTEMS);*
   **THE GOODYEAR TIRE & RUBBER**
27 **COMPANY;**
   **HARCO LABORATORIES,**
28 **INCORPORATED;**

2

**HENKEL CORPORATION** *(sued individually and as successor-in-interest to DEXTER HYSOL AEROSPACE, INC.)*;
**HENRY COMPANY**;
**W.W. HENRY COMPANY**;
**HOBART BROTHERS COMPANY**;
**HONEYWELL INTERNATIONAL, INC.** *(f/k/a ALLIED-SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION)*;
**HOPEMAN BROTHERS INC.**;
**IMO INDUSTRIES, INC.** *(sued individually and as successor-in-interest to DELAVAL TURBINE, INC. and also as successor-in-interest to C. H. WHEELER MANUFACTURING COMPANY)*;
**INGERSOLL RAND COMPANY** *(sued individually and as successor-in-interest to TERRY STEAM TURBINE COMPANY)*;
**ITT CORPORATION, f/k/a ITT INDUSTRIES, INC.** *(sued individually and as successor-in-interest to* FOSTER ENGINEERING COMPANY);
**J.T. THORPE & SON, INC.**;
**KAISER GYPSUM COMPANY, INC.**;
**THE LINCOLN ELECTRIC COMPANY**;
**LINDE NORTH AMERICA, INC.** *d/b/a THE BOC GROUP (sued individually and as successor-in-interest to AIRCO WELDING PRODUCTS)*;
**M. SLAYEN AND ASSOCIATES, INC.**;
**McNALLY INDUSTRIES, LLC** *(sued individually and as successor-in-interest to NORTHERN FIRE APPARATUS COMPANY)*;
**MEADWESTVACO CORPORATION** *f/k/a WESTVACO*;
**METROPOLITAN LIFE INSURANCE COMPANY**;
**MILLER ELECTRIC MFG. CO,** *a wholly owned subsidiary of ILLINOIS TOOL WORKS, INC.*;
**PARKER AEROSPACE GROUP** *d/b/a STRATOFLEX PRODUCTS, a Division of PARKER HANNIFIN CORPORATION*;
**PARKER-HANNIFIN CORPORATION** *d/b/a STRATOFLEX PRODUCTS*;
**THE PEP BOYS - MANNY MOE & JACK OF CALIFORNIA**;
**PFIZER INC.**;
**PNEUMO ABEX LLC** *(sued as successor-in-interest to ABEX CORPORATION)*;
**SHELL OIL COMPANY**;

3

1 | SOCO-WEST, INC. *f/k/a Brenntag West, Inc. f/k/a Soco-Lynch Corporation (sued as*
2 | *successor-in-interest to Western Chemical & Manufacturing Co.)*;
3 | STERLING FLUID SYSTEMS (USA), LLC *f/k/a PEERLESS PUMP CO.*;
4 | SYD CARPENTER, MARINE CONTRACTOR, INC.;
5 | UNION CARBIDE CORPORATION; UNITED TECHNOLOGIES
6 | CORPORATION *(sued individually and as successor-in-interest to PRATT &*
7 | *WHITNEY)*; VELAN VALVE CORPORATION;
8 | WARREN PUMPS, LLC *(sued individually and as successor-in-interest to*
9 | *QUIMBY PUMP CO)*; WEIR VALVES & CONTROLS USA,
10 | INC. *f/k/a ATWOOD & MORRILL*; THE WILLIAM POWELL COMPANY;
11 | and DOES 1-450

12 |                          Defendants

## GENERAL ALLEGATIONS

COME NOW Plaintiffs, ROBERT FINAMORE and REBECCA FINAMORE (hereinafter "Plaintiffs"), and complain and allege as follows:

1.     The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendant DOES 1 through 450, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names.  When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly.  Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

2.     At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of his Co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.  Plaintiffs

4

are informed and believe, and thereon allege that at all times herein mentioned, Defendants **AIR & LIQUID SYSTEMS CORPORATION** *(sued as successor-by-merger to BUFFALO PUMPS, INC.)*; **AMCORD, INC.** *(sued individually and as successor-in-interest to RIVERSIDE CEMENT CO.)*; **ARMSTRONG INTERNATIONAL, INC.; BORG WARNER CORPORATION** *by its successor-in-interest BORG-WARNER MORSE TEC, INC.*; **CALIFORNIA PORTLAND CEMENT COMPANY; CBS CORPORATION** *(a Delaware Corporation) f/k/a VIACOM, INC. (sued as successor-by-merger to CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT)*; **CIRRUS ENTERPRISES, LLC** *(sued individually and as successor-in-interest to E. V. ROBERTS AND ASSOCIATES, INC. and EVRA, INC.)*; **CLA-VAL CO.; CRANE CO.** *(sued individually and as successor-in-interest to COCHRANE CORPORATION AND CHAPMAN VALVE COMPANY)*; **CRANE ENVIRONMENTAL, INC.** *(sued individually and as successor-in-interest to COCHRANE CORPORATION)*; **CYPRUS AMAX MINERALS COMPANY** *(sued as successor to SIERRA TALC COMPANY and UNITED TALC COMPANY)*; **CYTEC INDUSTRIES, INC.** *(sued individually and as successor-in-interest to AMERICAN CYANIMID)*; **DANA COMPANIES LLC** *(sued individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY)*; **DAP PRODUCTS, INC.; DEXTER HYSOL AEROSPACE, LLC** *f/k/a DEXTER HYSOL AEROSPACE, INC. (sued as success-by-merger with HYSOL CORPORATION)*; **ELLIOTT TURBO MACHINERY COMPANY** *a/k/a ELLIOTT COMPANY*; **FLOWSERVE US, INC.** *(sued as successor to EDWARD VALVE, INC.)*; **FMC CORPORATION** *(sued individually and as successor-in-interest to PEERLESS PUMP COMPANY, and also as successor-in-interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY)*; **FORD MOTOR COMPANY; FOSTER WHEELER ENERGY CORPORATION; GARDNER DENVER, INC.; GENERAL ELECTRIC COMPANY; GENUINE PARTS COMPANY** *d/b/a NATIONAL AUTOMOTIVE PARTS ASSOCIATION (aka NAPA) and also d/b/a as RAYLOC, a division of NAPA)*; **GEORGIA-PACIFIC LLC,** *f/k/a* GEORGIA-PACIFIC CORPORATION; **GOODRICH CORPORATION** *(sued individually and as successor-in-interest to THE B.F. GOODRICH COMPANY and SIMMONDS PRECISION ENGINE SYSTEMS)*; **THE GOODYEAR TIRE & RUBBER**

1  COMPANY; HARCO LABORATORIES, INCORPORATED; HENKEL CORPORATION

2  (sued individually and as successor-in-interest to DEXTER HYSOL AEROSPACE, INC.); **HENRY**

3  **COMPANY; W.W. HENRY COMPANY; HOBART BROTHERS COMPANY; HONEYWELL**

4  **INTERNATIONAL, INC.** (f/k/a ALLIED-SIGNAL, INC., sued as successor-in-interest to BENDIX

5  CORPORATION); **HOPEMAN BROTHERS INC.; IMO INDUSTRIES, INC.** (sued individually

6  and as successor-in-interest to DELAVAL TURBINE, INC. and also as successor-in-interest to C. H.

7  WHEELER MANUFACTURING COMPANY); **INGERSOLL RAND COMPANY** (sued individually

8  and as successor-in-interest to TERRY STEAM TURBINE COMPANY); **ITT CORPORATION, f/k/a**

9  **ITT INDUSTRIES, INC.** (sued individually and as successor-in-interest to FOSTER

10  ENGINEERING COMPANY); **J.T. THORPE & SON, INC.; KAISER GYPSUM COMPANY,**

11  **INC.; THE LINCOLN ELECTRIC COMPANY; LINDE NORTH AMERICA, INC.** d/b/a THE

12  BOC GROUP (sued individually and as successor-in-interest to AIRCO WELDING PRODUCTS); **M.**

13  **SLAYEN AND ASSOCIATES, INC.; McNALLY INDUSTRIES, LLC** (sued individually and as

14  successor-in-interest to NORTHERN FIRE APPARATUS COMPANY); **MEADWESTVACO**

15  **CORPORATION** f/k/a WESTVACO; **METROPOLITAN LIFE INSURANCE COMPANY;**

16  **MILLER ELECTRIC MFG. CO,** a wholly owned subsidiary of ILLINOIS TOOL WORKS, INC.;

17  **PARKER AEROSPACE GROUP** d/b/a STRATOFLEX PRODUCTS, a Division of PARKER

18  HANNIFIN CORPORATION; **PARKER-HANNIFIN CORPORATION** d/b/a STRATOFLEX

19  PRODUCTS; **THE PEP BOYS - MANNY MOE & JACK OF CALIFORNIA; PFIZER INC.;**

20  **PNEUMO ABEX LLC** (sued as successor-in-interest to ABEX CORPORATION); **SHELL OIL**

21  **COMPANY; SOCO-WEST, INC.** f/k/a Brenntag West, Inc. f/k/a Soco-Lynch Corporation (sued as

22  successor-in-interest to Western Chemical & Manufacturing Co.); **STERLING FLUID SYSTEMS**

23  **(USA), LLC** f/k/a PEERLESS PUMP CO.; **SYD CARPENTER, MARINE CONTRACTOR, INC.;**

24  **UNION CARBIDE CORPORATION; UNITED TECHNOLOGIES CORPORATION** (sued

25  individually and as successor-in-interest to PRATT & WHITNEY); **VELAN VALVE**

26  **CORPORATION; WARREN PUMPS, LLC** (sued individually and as successor-in-interest to

27  QUIMBY PUMP CO); **WEIR VALVES & CONTROLS USA, INC.** f/k/a ATWOOD & MORRILL;

28  **THE WILLIAM POWELL COMPANY,** and **DOES 1-450** inclusive, were individuals,

6

1  corporations, partnerships and/or unincorporated associations organized and existing under and by
2  virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and
3  that said Defendants, and each of them, were and are authorized to do and are doing business in the
4  State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants,
5  and each of them, were and are authorized to do and are doing business in the State of California, and
6  that said Defendants have regularly conducted business in the County of Los Angeles, State of
7  California.

8         3.      Plaintiffs allege herein that Plaintiff ROBERT FINAMORE developed malignant
9  mesothelioma as a result of exposure to asbestos from Defendants' asbestos, asbestos-containing
10  products and/or products designed to be used in association with asbestos products ("Defendants'
11  Products"), including: **AIR & LIQUID SYSTEMS CORPORATION** *(sued as successor-by-merger*
12  *to BUFFALO PUMPS, INC.)* (for Buffalo Pumps); **AMCORD, INC.** *(sued individually and as*
13  *successor-in-interest to RIVERSIDE CEMENT CO.)* (for plastic gun cement); **ARMSTRONG**
14  **INTERNATIONAL, INC.** (for Armstrong Steam Traps); **BORG WARNER CORPORATION** *by*
15  *its successor-in-interest BORG-WARNER MORSE TEC, INC.* (for Borg Warner Clutches);
16  **CALIFORNIA PORTLAND CEMENT COMPANY** (for Colton Plastic Gun Cement); **CBS**
17  **CORPORATION** *(a Delaware Corporation) f/k/a VIACOM, INC. (sued as successor-by-merger to*
18  *CBS CORPORATION (a Pennsylvania Corporation) f/k/a WESTINGHOUSE ELECTRIC*
19  *CORPORATION and also as successor-in-interest to BF STURTEVANT)* (for Westinghouse Turbines,
20  Engines and Pumps, and BF Sturtevant Forced-Draft Blowers and Turbines); **CIRRUS**
21  **ENTERPRISES, LLC** *(sued individually and as successor-in-interest to E. V. ROBERTS AND*
22  *ASSOCIATES, INC. and EVRA, INC.)* (as a supplier of Hysol Adhesives); **CLA-VAL CO.** (for Cla-
23  Val Valves); **CRANE CO.** *(sued individually and as successor-in-interest to COCHRANE*
24  *CORPORATION AND CHAPMAN VALVE COMPANY)* (for Crane Valves and Packing, Chapman
25  Valves, Cochrane Feed Tanks, and Cranite Gaskets); **CRANE ENVIRONMENTAL, INC.** *(sued*
26  *individually and as successor-in-interest to COCHRANE CORPORATION)* (for Cochrane Feed
27  Tanks); **CYPRUS AMAX MINERALS COMPANY** *(sued as successor to SIERRA TALC*
28  *COMPANY and UNITED TALC COMPANY)* (as a supplier of asbestos-containing talc); **CYTEC**

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  INDUSTRIES, INC. *(sued individually and as successor-in-interest to AMERICAN CYANIMID)* (for
2  Dexter Hysol FM-40 and FM-41 Formcore Adhesives); **DANA COMPANIES LLC** *(sued
3  individually and as successor-in-interest to VICTOR GASKET MANUFACTURING COMPANY)* (for
4  Victor Gaskets); **DAP PRODUCTS, INC.** (for Dap Caulk); **DEXTER HYSOL AEROSPACE, LLC**
5  *f/k/a DEXTER HYSOL AEROSPACE, INC. (sued as success-by-merger with HYSOL CORPORATION)*
6  (for Dexter Hysol EA-934 Adhesive); **ELLIOTT TURBO MACHINERY COMPANY** *a/k/a*
7  *ELLIOTT COMPANY* (for Elliott Deaerating Feed Systems); **FLOWSERVE US, INC.** *(sued as*
8  *successor to EDWARD VALVE, INC.)* (for Edward Valve); **FMC CORPORATION** *(sued*
9  *individually and as successor-in-interest to PEERLESS PUMP COMPANY, and also as successor-in-*
10  *interest to NORTHERN PUMP COMPANY f/k/a NORTHERN FIRE APPARATUS COMPANY)* (for
11  Northern Pumps and Peerless Pumps); **FORD MOTOR COMPANY** (for Ford Friction Products);
12  **FOSTER WHEELER ENERGY CORPORATION** (for Foster Wheeler Distilling Plants);
13  **GARDNER DENVER, INC.** (for Gardner-Denver Pumps); **GENERAL ELECTRIC COMPANY**
14  (for General Electric Turbines, Ship's Service Generators, and Engines); **GENUINE PARTS**
15  **COMPANY** *d/b/a NATIONAL AUTOMOTIVE PARTS ASSOCIATION (aka NAPA) and also d/b/a as*
16  *RAYLOC, a division of NAPA)* (for Rayloc brakes and as a supplier of friction products); **GEORGIA-**
17  **PACIFIC LLC**, f/k/a GEORGIA-PACIFIC CORPORATION (for Georgia-Pacific Joint Compound);
18  **GOODRICH CORPORATION** *(sued individually and as successor-in-interest to THE B.F.*
19  *GOODRICH COMPANY and SIMMONDS PRECISION ENGINE SYSTEMS)* (for B.F. Goodrich
20  Aircraft Brakes and Aircraft Engine Parts); **THE GOODYEAR TIRE & RUBBER COMPANY** (for
21  Goodyear Gaskets and Aircraft Brakes); **HARCO LABORATORIES, INCORPORATED** (for
22  Harco Thermocouples); **HENKEL CORPORATION** *(sued individually and as successor-in-interest*
23  *to DEXTER HYSOL AEROSPACE, INC.)* (for Dexter Hysol EA-934 Aircraft Adhesive); **HENRY**
24  **COMPANY** (for Henry's 208 Roofing Cement); **W.W. HENRY COMPANY** (for Henry's 208
25  Roofing Cement); **HOBART BROTHERS COMPANY** (for Hobart Welding Rods);
26  **HONEYWELL INTERNATIONAL, INC.** *(f/k/a ALLIED-SIGNAL, INC., sued as successor-in-*
27  *interest to BENDIX CORPORATION)* (for Bendix Brakes); **HOPEMAN BROTHERS INC.** (for
28  asbestos-containing marinate and micarta board); **IMO INDUSTRIES, INC.** *(sued individually and*

8

as successor-in-interest to *DELAVAL TURBINE, INC.* and also as successor-in-interest to *C. H. WHEELER MANUFACTURING COMPANY)* (for DeLaval Pumps and C. H. Wheeler Air Ejectors); **INGERSOLL RAND COMPANY** *(sued individually and as successor-in-interest to TERRY STEAM TURBINE COMPANY)* (for Ingersoll Rand Pumps and Compressors, and Terry Turbines); **ITT CORPORATION, f/k/a ITT INDUSTRIES, INC.** *(sued individually and as successor-in-interest to* FOSTER ENGINEERING COMPANY) (for Foster valves); **J.T. THORPE & SON, INC.** (as a boiler contractor and supplier of asbestos-containing insulation); **KAISER GYPSUM COMPANY, INC.** (for Kaiser Gypsum Joint Compound); **THE LINCOLN ELECTRIC COMPANY** (for Lincoln Welding Rods); **LINDE NORTH AMERICA, INC.** *d/b/a THE BOC GROUP (sued individually and as successor-in-interest to AIRCO WELDING PRODUCTS)* (for Airco Welding Rods); **M. SLAYEN AND ASSOCIATES, INC.** (as an insulation contractor); **McNALLY INDUSTRIES, LLC** *(sued individually and as successor-in-interest to NORTHERN FIRE APPARATUS COMPANY)* (for Northern Pumps); **MEADWESTVACO CORPORATION** *f/k/a WESTVACO* (as a supplier of asbestos-containing friction paper); **METROPOLITAN LIFE INSURANCE COMPANY** (as a conspiracy defendant); **MILLER ELECTRIC MFG. CO,** *a wholly owned subsidiary of ILLINOIS TOOL WORKS, INC.* (for Miller Welding Rods); **PARKER AEROSPACE GROUP** *d/b/a STRATOFLEX PRODUCTS, a Division of PARKER HANNIFIN CORPORATION* (for Stratoflex Aircraft Engines); **PARKER-HANNIFIN CORPORATION** *d/b/a STRATOFLEX PRODUCTS* (for Stratoflex Aircraft Engines); **THE PEP BOYS - MANNY MOE & JACK OF CALIFORNIA** (as a supplier of friction products); **PFIZER INC.** (as a supplier of asbestos-containing talc); **PNEUMO ABEX LLC** *(sued as successor-in-interest to* ABEX CORPORATION) (for Abex friction products); **SHELL OIL COMPANY** (for Epon 934 Aircraft Adhesive); **SOCO-WEST, INC.** *f/k/a Brenntag West, Inc. f/k/a Soco-Lynch Corporation (sued as successor-in-interest to Western Chemical & Manufacturing Co.)* (as a supplier of asbestos fibers); **STERLING FLUID SYSTEMS (USA), LLC** *f/k/a PEERLESS PUMP CO.* (for Peerless Pumps); **SYD CARPENTER, MARINE CONTRACTOR, INC.** (as an insulation and decking contractor); **UNION CARBIDE CORPORATION** (as an asbestos fiber supplier); **UNITED TECHNOLOGIES CORPORATION** *(sued individually and as successor-in-interest to PRATT & WHITNEY)* (for Pratt & Whitney

9

1   Engines); **VELAN VALVE CORPORATION** (for Velan Valves and Steam Traps); **WARREN**

2   **PUMPS, LLC** *(sued individually and as successor-in-interest to QUIMBY PUMP CO)* (for Warren

3   Pumps and Quimby Pumps); **WEIR VALVES & CONTROLS USA, INC.** *f/k/a ATWOOD &*

4   *MORRILL* (for Atwood & Morrill Valves), and **THE WILLIAM POWELL COMPANY** (for Powell

5   Valves).

6                                  **FIRST CAUSE OF ACTION**

7                                           (Negligence)

8       PLAINTIFFS COMPLAIN OF DEFENDANTS AND DOES 1-450, THEIR "ALTERNATE
     ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE
9   ALLEGE AS FOLLOWS:

10       4.      Plaintiffs incorporate herein by reference, as though fully set forth therein, the general

11  allegations set forth above.

12       5.      At all times herein mentioned, each of the named Defendants and DOES 1 through 450

13  were the successor, successor-in-business, successor-in-product line or a portion thereof, parent,

14  subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity

15  researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling,

16  distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing,

17  contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others,

18  packaging and advertising asbestos, and products containing asbestos, including but not limited to,

19  those products identified in paragraph 3 above.  Said entities shall hereinafter collectively be called

20  "alternate entities."  Each of the herein named Defendants is liable for the tortious conduct of each

21  successor, successor-in-business, successor-in-product line or a portion thereof, assign, predecessor in

22  product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially

23  owned entity, or entity that it was a member of, or funded, that researched, repaired, marketing,

24  warranted, re-branded, manufactured for others and advertised asbestos, and asbestos products.  The

25  following Defendants, and each of them, are liable for the acts of each and every "alternate entity",

26  and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such

27  "alternate entity"; Defendants, and each of them, have acquired the assets, product line, or a portion

28  thereof, of each such "alternate entity"; Defendants, and each of them, have caused the destruction of

1  Plaintiffs' remedy against each such "alternate entity"; each such Defendant has the ability to assume
2  the risk-spreading role of each such "alternate entity"; and that each such Defendant enjoys the
3  goodwill originally attached to each such "alternate entity".

4

| **DEFENDANT** | **ALTERNATE ENTITY** |
|---|---|
| AIR AND LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| AMCORD, INC. | RIVERSIDE CEMENT COMPANY<br>AMERICAN CEMENT CORPORATION<br>PEERLESS CEMENT CORPORATION AND<br>HERCULES CEMENT CORPORATION |
| BORG-WARNER MORSE TEC INC. | BORG-WARNER CORPORATION<br>BYRON JACKSON PUMPS |
| BW/IP INTERNATIONAL, INC. | BYRON JACKSON PUMPS |
| CBS CORPORATION | VIACOM INC.<br>WESTINGHOUSE ELECTRIC CORPORATION<br>BF STURTEVANT<br>VIACOM INTERNATIONAL, INC.<br>VIACOM PLUS |
| CIRRUS ENTERPRISES LLC | E. V. ROBERTS & ASSOCIATES, INC.<br>EVRA, INC. |
| CRANE CO. | CRANE ENVIRONMENTAL<br>CRANE PUMPS AND SYSTEMS<br>VALVE SERVICES<br>CRANE VALVE GROUP<br>CRANE SUPPLY<br>CHAPMAN VALVE CO.<br>COCHRANE FEED TANKS<br>COCHRANE DIVISION |
| CRANE ENVIRONMENTAL, INC. | COCHRANE CORPORATION |
| CYPRUS AMAX MINERALS COMPANY | SIERRA TALC COMPANY<br>UNITED TALC COMPANY |
| CYTEC INDUSTRIES, INC. | AMERICAN CYANIMID |
| DANA COMPANIES LLC | VICTOR GASKET MFG COMPANY |
| ELLIOTT TURBOMACHINERY COMPANY | ELLIOTT COMPANY |

11

| | |
|---|---|
| 1 | FLOWSERVE US INC. | FLOWSERVE PUMP CORPORATION |
| | | EDWARD VALVE INC. |
| 2 | | EDWARD VALVE & MANUFACTURING |
| 3 | FMC CORPORATION | PEERLESS PUMP COMPANY |
| | | McNALLY INDUSTRIES-NORTHERN PUMP |
| 4 | | NORTHERN PUMP COMPANY |
| 5 | FORD MOTOR COMPANY | MOTORCRAFT |
| 6 | FOSTER WHEELER ENERGY CORPORATION | FOSTER WHEELER BOILER CORPORATION |
| | | FOSTER WHEELER CONTRACTORS, INC. |
| 7 | | FOSTER WHEELER CORPORATION |
| | | FOSTER WHEELER DEVELOPMENT CORP. |
| 8 | | FOSTER WHEELER ENERGY RESOURCES INC. |
| 9 | | FOSTER WHEELER ENERGY SERVICES, INC. |
| 10 | | FOSTER WHEELER ENVIRESPONSE, INC. |
| | | FOSTER WHEELER ENVIRONMENTAL |
| 11 | | CORPORATION |
| | | FOSTER WHEELER POWER GROUP, INC. |
| 12 | | FOSTER WHEELER POWER SYSTEMS, INC. |
| | | FOSTER WHEELER PYROPOWER, INC. |
| 13 | | FOSTER WHEELER REALTY SERVICES, INC. |
| 14 | | FOSTER WHEELER USA CORPORATION |
| 15 | GARDNER DENVER, INC. | GARDNER GOVERNOR CORPORATION |
| | | GARDNER COMPANY |
| 16 | | GARDNER DENVER INDUSTRIAL MACHINERY |
| 17 | | COOPER INDUSTRIES, INC. |
| 18 | GENERAL ELECTRIC COMPANY | GENERAL ELECTRIC BROADCASTING COMPANY, INC. |
| 19 | | GENERAL ELECTRIC CAPITAL ASSURANCE COMPANY |
| 20 | | GENERAL ELECTRIC PROFESSIONAL SERVICES COMPANY |
| 21 | | GENERAL ELECTRIC TRADING COMPANY |
| 22 | | |
| 23 | GENUINE PARTS COMPANY PARTS | NATIONAL AUTOMOTIVE ASSOCIATION NAPA |
| | | RAYLOC |
| 24 | | |
| 25 | GEORGIA-PACIFIC CORPORATION | BESTWALL GYPSUM COMPANY |
| | | GEORGIA-PACIFIC RESINS, INC. |
| 26 | | GEORGIA-PACIFIC WEST, INC. |
| 27 | GOODRICH CORPORATION | THE B.F. GOODRICH COMPANY |
| 28 | HENKEL CORPORATION | DEXTER HYSOL AEROSPACE, INC. |

12

| | |
|---|---|
| HONEYWELL INTERNATIONAL, INC. | ALLIED SIGNAL, INC. |
| | BENDIX CORPORATION |
| HOPEMAN BROTHERS MARINE INTERIORS | HOPEMAN BROTHERS, INC. |
| IMO INDUSTRIES, INC. | DE LAVAL TURBINE INC. |
| | WARREN PUMPS, INC. |
| | COLFAX CORPORATION |
| | IMO PUMP |
| | IMO AB |
| | COLFAX PUMP GROUP |
| | ALLWEILER |
| | HOUTTUIN |
| | C.H. WHEELER |
| INGERSOLL-RAND COMPANY | INGERSOLL-RAND ABG |
| | DRESSER-RAND |
| | POWERWORKS |
| | THERMOKING |
| | TERRY STEAM TURBINE COMPANY |
| | WHITON MACHINE CO. |
| ITT CORPORATION | ITT INDUSTRIES, INC. |
| | FOSTER ENGINEERING COMPANY |
| KAISER GYPSUM COMPANY, INC. | KAISER GYPSUM COMPANY |
| LINDE NORTH AMERICA, INC. | THE BOC GROUP |
| | AIRCO WELDING PRODUCTS |
| MCNALLY INDUSTRIES, INC. | NORTHERN PUMP |
| | FMC CORPORATION |
| MEADWESTVACO CORPORATION | WESTVACO |
| | MEAD PAPER COMPANY |
| MILLER ELECTRIC MFG CO. | ILLINOIS TOOL WORKS |
| NORTHERN PUMP COMPANY | NORTHERN PUMP MANUFACTURING CORPORATION |
| | NORTHERN FIRE APPARATUS COMPANY |
| | NORTHERN PUMP, INCORPORATED |
| PARKER-HANNIFIN CORPORATION | PARKER AEROSPACE GROUP |
| | STRATOFLEX PRODUCTS DIVISION |
| THE PEP BOYS MANNY MOE & JACK OF CALIFORMIA | MMJ CORPORATION |
| | PEP PROPERTIES, INC. |

13

| | | |
|---|---|---|
| 1 | SOCO-WEST, INC. | BRENNTAG WEST, INC. |
| 2 | | SOCO-LYNCH CORPORATION |
| | | WESTERN CHEMICAL & MFG CO |
| 3 | STERLING FLUID SYSTEMS (AMERICAS) INC. | STERLING FLUID SYSTEMS (CANADA) LTD. |
| 4 | | STERLING FLUID SYSTEMS (COLOMBIA) LTD. |
| 5 | | PEERLESS PUMP COMPANY |
| | | LaBOUR PUMP COMPANY |
| 6 | | STERLING PEERLESS PUMPS |
| 7 | UNION CARBIDE CORPORATION | THE DOW CHEMICAL COMPANY |
| 8 | | UNION CARBIDE CHEMICALS AND PLASTICS COMPANY, INC. |
| 9 | | UNION CARBIDE AND CARBON CORPORATION |
| 10 | | LINDE AIR PRODUCTS COMPANY NATIONAL CARBON CO., INC. |
| 11 | | PREST-O-LITE CO., INC. UNION CARBIDE COMPANY |
| 12 | | CARBIDE AND CARBON CHEMICALS CORPORATION |
| 13 | | BAKELITE CORPORATION UNION CARBIDE CONSUMER PRODUCTS CO. |
| 14 | | UNION CARBIDE MINING AND METALS DIVISION |
| 15 | | UNION CARBIDE ELECTRONICS DIVISION UNION CARBIDE HYDROCARBONS DIVISION |
| 16 | | |
| 17 | | UNION CARBIDE FERROALLOYS DIVISION JENNAT CORPORATION |
| 18 | | AMERCHOL CORPORATION UOP |
| 19 | | UCAR CARBON COMPANY UNION CARBIDE INDUSTRIAL GASES INC. |
| 20 | | PRAXAIR, INC. POLIMERI EUROPA S.r.l. |
| 21 | | ASIAN ACETYLS COMPANY, LTD. EQUATE PETROCHEMICAL COMPANY |
| 22 | | |
| 23 | UNITED TECHNOLOGIES CORPORATION | PRATT & WHITNEY |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | WARREN PUMPS LLC | WARREN PUMPS INC. |
| 28 | | WARREN PUMPS-HOUDAILLE, INC. COLFAX PUMP GROUP |
| | | ALWEILER AG |

14

1                                             HOUTTUIN BV
                                              IMO PUMP
2                                             ZENITH PUMPS
                                              QUIMBY PUMP CO.
3

4   WEIR VALVE & CONTROLS USA, INC.           ATWOOD & MORRILL CO., INC.
                                              THE WEIR GROUP PLC
5                                             WEIR MINERALS
                                              WEIR CLEAR LIQUID
6                                             WEIR VALVES & CONTROLS
                                              WEIR SERVICES
7                                             WEIR TECHNA
                                              A & M VALVE
8                                             HOPHOLD A & M, INC.

9   THE WILLIAM POWELL COMPANY                POWELL VALVES

10

11        6.    At all times herein mentioned, Defendants, their "alternate entities", and each of them,

12   were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying,

13   labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting,

14   servicing, installing, contracting for installation, repairing, renting, marketing, warranting, re-branding,

15   manufacturing for others, packaging, and advertising asbestos and asbestos products (hereinafter

16   Defendants' Products).  **FORD MOTOR COMPANY** specifically designed its braking systems for

17   asbestos-containing brake linings such that no other material could be utilized as brake linings in those

18   systems.

19        7.    At all times herein mentioned, Defendants, their "alternate entities", and each of them,

20   singularly and jointly, negligently and carelessly researched, manufactured, fabricated, specified,

21   designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the

22   health hazards, labeled, assembled, distributed, leased, bought, rented, offered for sale, supplied, sold,

23   inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

24   manufactured for others, packaged, and advertised Defendants' Products, including but not limited to

25   those products identified in paragraph 3 above, in that the Defendants' Products were unreasonably

26   dangerous because they released respirable asbestos fibers which resulted in personal injuries to users,

27   consumers, workers, bystanders, and others, including Plaintiff ROBERT FINAMORE herein

28   (hereinafter collectively called "exposed person").  Said products were used at all times in a manner

1    that was reasonably foreseeable to Defendants, their "alternate entities", and each of them, thereby

2    rendering said products unsafe and dangerous for use by "exposed person". Plaintiffs herein allege

3    that ROBERT FINAMORE's exposure to Defendants' Products, including but not limited to those

4    products identified in paragraph 3 above (hereinafter referred to as "Defendants' products" or

5    "Defendants' asbestos and asbestos-containing products"), were a substantial contributing factor in the

6    development of his malignant mesothelioma, and therefore proximately caused Plaintiff ROBERT

7    FINAMORE's injuries.

8         8.    Defendants, their "alternate entities", and each of them, had a duty to exercise

9    reasonable care while engaging in the activities mentioned above and each Defendant breached said

10   duty of reasonable care in that Defendants, and each of them, failed to safely and adequately design,

11   manufacture and/or sell Defendants' products; failed to test said products; failed to investigate the

12   hazards of said products; failed to warn "exposed person", including Plaintiff ROBERT FINAMORE,

13   of the health hazards of using Defendants' products; failed to disclose the known or knowable dangers

14   of using Defendants' products; failed to obtain suitable alternative materials to asbestos when such

15   alternatives were available; and as otherwise stated herein.

16        9.    The Defendants' products were and are hazardous to the health and safety of Plaintiff,

17   and others in Plaintiff's position working with and in close proximity to such products, and since on or

18   before 1930, the hazards and dangerous propensities of the Defendants' products were both known and

19   knowable to the Defendants, their "alternate entities", and each of them, through the use of medical

20   and/or scientific data and other knowledge available to Defendants, their "alternate entities", and each

21   of them, at the time of Defendants' manufacture, distribution, sale, research, study, fabrication, design,

22   modification, labeling, assembly, leasing, buying, offering for sale, supply, inspection, service,

23   installation, contracting for installation, repair, marketing, warranting, re-branding, re-manufacturing

24   for others, packaging and advertising, of those products, which clearly indicated the hazards and

25   dangerous propensities of asbestos presented a substantial danger to users, including Plaintiff

26   ROBERT FINAMORE, of Defendants' Products through the intended and reasonably foreseeable use

27   of those products.

28        10.   Defendants, their "alternate entities", and each of them, knew, or reasonably should

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1   have known, that Defendants' Products were dangerous and were likely to be dangerous when used in

2   their intended and reasonably foreseeable manner.

3       11.   Defendants, their "alternate entities", and each of them, knew, or reasonably should

4   have known, that Defendants' Products would be installed, repaired, maintained, overhauled, removed,

5   sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," or otherwise

6   disturbed in their ordinary, intended and foreseeable use, resulting in the release of airborne hazardous

7   and dangerous asbestos fibers, and that through such activity, "exposed person," including Plaintiff

8   ROBERT FINAMORE herein, would be exposed to said hazardous and dangerous asbestos fibers.

9   Defendants, their "alternate entities", and each of them, knew or reasonably should have known that

10  users, such as Plaintiff ROBERT FINAMORE and others in his position, working with and in close

11  proximity to Defendants' Products would not realize or know the danger. Defendants, their "alternate

12  entities", and each of them, negligently failed to adequately warn or instruct of the dangers of the

13  products.  A reasonable designer, manufacturer, distributor, seller, installer, buyer or supplier, under

14  the same or similar circumstances, would have warned of the dangers to avoid exposing others to a

15  foreseeable risk of harm.  The negligent failure of Defendants, their "alternate entities", and each of

16  them, to warn was a substantial factor in causing harm to Plaintiff ROBERT FINAMORE.

17      12.   Plaintiff ROBERT FINAMORE used, handled, or was otherwise exposed to asbestos

18  from Defendants' Products referred to herein in a manner that was reasonably foreseeable to

19  Defendants, and each of them.   Plaintiff's exposure to Defendants' Products occurred at various

20  locations set forth in **Exhibit "A"**, which is attached hereto and incorporated by reference herein.

21  Plaintiff ROBERT FINAMORE alleges that he used, handled, or was otherwise exposed to asbestos

22  from Defendants' Products during his employment with the United States Navy from approximately

23  1967 to 1974. During this time, Plaintiff ROBERT FINAMORE served aboard the USS Pritchett (DD-

24  561), USS Oriskany (CV-34), USS Providence (CL-82/CLG-6), and USS Piedmont (AD-17). Plaintiff

25  ROBERT FINAMORE worked as a Fireman and Machinist Mate. His job duties included operating,

26  maintaining, and repairing various equipment located aboard these ships. This equipment included, but

27  was not limited to, pumps, steam traps, turbines, engines, forced draft blowers, gaskets, packing,

28  deaerating feed systems, distilling plants, condensers, compressors, air ejectors, and boilers. Plaintiff

1  ROBERT FINAMORE also alleges that he used, handled, or was otherwise exposed to asbestos from

2  Defendants' Products during his employment with Liquid Oxygen Company as a Welder from

3  approximately 1974 to 1979. Plaintiff ROBERT FINAMORE also alleges that he used, handled, or

4  was otherwise exposed to asbestos from Defendants' Products during his employment with Western

5  States Steel as a welder from approximately 1979 to 1981. Plaintiff ROBERT FINAMORE also

6  alleges that he used, handled, or was otherwise exposed to asbestos from Defendants' Products during

7  his employment as an Aircraft Mechanic at McClellan Air Force Base in Sacramento, California from

8  approximately 1981 to 1989. These products include, but are not limited to, aircraft adhesives, aircraft

9  brakes, aircraft engine parts, aircraft gaskets, and aircraft engines. Plaintiff ROBERT FINAMORE

10  also alleges that he used, handled, or was otherwise exposed to asbestos from Defendants' Products

11  when he performed repair and maintenance work on his personal and family vehicles from the 1960's

12  to the 1980's. Finally, Plaintiff ROBERT FINAMORE also alleges that he used, handled, or was

13  otherwise exposed to asbestos from Defendants' Products when he performed home remodel and

14  construction work on his personal residences in the early 1970's.

15      13.    As a direct and proximate result of the conduct of the Defendants, their "alternate

16  entities", and each of them, as aforesaid, Plaintiff ROBERT FINAMORE's exposure to asbestos from

17  use of Defendants' Products caused severe and permanent injury to the Plaintiff, the nature of which,

18  along with the date of Plaintiff's diagnosis and the date he learned such injuries were attributable to

19  exposure to Defendants' Products, are set forth in **Exhibit "B"**, which is attached hereto and

20  incorporated by reference herein.  Plaintiffs are informed and believe, and thereon allege, that

21  progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers

22  without perceptible trauma and that said disease results from exposure to Defendants' Products over a

23  period of time.

24      14.    Plaintiff ROBERT FINAMORE suffers from malignant pleural mesothelioma, caused

25  by exposure to asbestos from Defendants' Products including those products identified in paragraph 3

26  above.  Plaintiff ROBERT FINAMORE was not aware at the time of exposure that Defendants'

27  Products presented any risk of injury and/or disease.

28      15.    As a direct and proximate result of the aforesaid conduct of Defendants, their "alternate

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1    entities", and each of them, Plaintiff ROBERT FINAMORE has suffered and will continue to suffer

2    permanent injuries and future injuries to his person, body and health, including, but not limited to,

3    pain, discomfort, loss of weight, loss of appetite, fatigue, somnolence, lethargy, dyspnea, dysphagia,

4    and other physical symptoms, and the mental and emotional distress attendant thereto, as Plaintiff's

5    malignant mesothelioma progresses, all to his general damage in a sum in excess of the jurisdictional

6    limit of a limited civil case.

7         16.    As a direct and proximate result of the aforesaid conduct of the Defendants, their

8    "alternate entities", and each of them, Plaintiff ROBERT FINAMORE has incurred, is presently

9    incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care,

10   medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being

11   presently unknown to Plaintiffs, subject to proof at trial.

12        17.    As a further direct and proximate result of the said conduct of the Defendants, their

13   "alternate entities", and each of them, Plaintiffs have incurred, and will incur, loss of income, wages,

14   profits and commissions, a diminishment of earning potential, and other pecuniary losses, the true and

15   exact amount thereof being presently unknown to Plaintiffs, subject to proof at trial.

16        18.    Plaintiffs further allege that Defendants, their "alternate entities", and each of them,

17   also engaged in the following wrongful acts:

18        (a)    Defendants, their "alternate entities", and each of them, suppressed from all consumers,

19   including Plaintiff ROBERT FINAMORE, medical and scientific information concerning the health

20   hazards associated with inhalation of asbestos, including the substantial risk of injury or death

21   therefrom.  Although Defendants, and each of them, knew of the substantial risks associated with

22   exposure to asbestos, they willfully and knowingly concealed such information from the users of their

23   asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of

24   "exposed person", including Plaintiff ROBERT FINAMORE.

25        (b)    Defendants, their "alternate entities", and each of them, belonged to, participated in,

26   and financially supported industry organizations, including but not limited to the Gypsum Association,

27   Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf

28   of Defendants, their "alternate entities", and each of them, actively promoted the suppression of

19

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1    information about the dangers of asbestos to users of the aforementioned products and materials,

2    thereby misleading Plaintiff ROBERT FINAMORE as to the safety of their products.  Through their

3    participation and association with such industry organizations, Defendants, and each of them,

4    knowingly and deliberately concealed and suppressed the true information regarding asbestos and its

5    dangers, and propagated misinformation intended to instill in users of Defendants' Products a false

6    security about the safety of their products.  The Dust Control Committee, which changed its name to

7    the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the

8    subject of dust control.  Discussions in this committee were held many times regarding the dangers

9    inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information

10   was suppressed from public dissemination from 1946 to a date unknown to Plaintiff ROBERT

11   FINAMORE at this time;

12          (c)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford

13   Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim

14   and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and

15   possessed medical and scientific information of the connection between the inhalation of asbestos

16   fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and

17   other industry organizations to all other Defendants, their "alternate entities", and each of them, herein.

18   Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, failed to provide

19   this information to consumers;

20          (d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiff

21   ROBERT FINAMORE and others of the nature of said materials which were dangerous when

22   breathed and which could cause pathological effects without noticeable trauma, despite the fact that

23   Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to

24   disclose that said materials were dangerous and a threat to the health of persons coming into contact

25   therewith;

26          (e)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiff

27   ROBERT FINAMORE with information concerning adequate protective masks and other equipment

28   devised to be used when applying, mixing, installing and sanding the products of the Defendants, their

1  "alternate entities", and each of them, despite knowing that such protective measures were necessary,

2  and that they were under a duty to disclose that such materials were dangerous and would result in

3  injury to Plaintiff ROBERT FINAMORE and others applying and installing such material;

4       (f)    Defendants, their "alternate entities", and each of them, knew and failed to disclose that

5  Plaintiff ROBERT FINAMORE and anyone similarly situated, upon inhalation of asbestos would, in

6  time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis,

7  mesothelioma and/or cancer;

8       (g)    Defendants, their "alternate entities", and each of them, failed to provide information of

9  the true nature of the hazards of asbestos materials and that exposure to these material would cause

10  pathological effects without noticeable trauma to the public, including buyers, users, and physicians

11  employed by Plaintiff ROBERT FINAMORE so that said physicians could not examine, diagnose, and

12  treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their

13  "alternate entities", and each of them, were under a duty to so inform and said failure was misleading.

14       19.    Defendants, their "alternate entities", and each of them, and their officers, directors, and

15  managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge

16  of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities",

17  and each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each

18  of them, and each Defendant's officers, directors, and managing agents participated in, authorized,

19  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each

20  of their "alternate entities" as set forth herein.

21       20.    The herein-described conduct of said Defendants, their "alternate entities", and each of

22  them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and

23  indifference to the safety and health of "exposed person," including Plaintiff ROBERT FINAMORE,

24  in that Defendants, and each of them, continued to manufacture, market and/or sell dangerous products

25  known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial

26  hazards posed by use of their products, in order to continue to profit financially therefrom.

27  Defendants, their "alternate entities", and each of them, engaged in such conduct so despicable,

28  contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised

1    by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code

2    section 3294. Plaintiffs, for the sake of example and by way of punishing said Defendants, seek

3    punitive damages according to proof.

4         21.    Defendants, and each of them, engaged in conduct which was intended by Defendants,

5    and each of them, to cause injury to the Plaintiff, and despicable conduct which was carried on by the

6    Defendants with a willful and conscious disregard of the rights or safety of others, including Plaintiff

7    ROBERT FINAMORE.

8         22.    Defendants, and each of them, engaged in the despicable conduct described herein that

9    subjected persons, including Plaintiff ROBERT FINAMORE, to cruel and unjust hardship in the form

10   of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious

11   disregard of those persons' rights.

12        23.    As a direct and proximate result of such intentional conduct by Defendants, their

13   "alternate entities", and each of them, Plaintiff ROBERT FINAMORE sustained the injuries and

14   damages alleged herein.

15        WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and

16   each of them, as hereinafter set forth.

17                              **SECOND CAUSE OF ACTION**
                                    (Strict Liability)
18

19        AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION

20   FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR
     "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:

21        24.    Plaintiffs incorporate herein by reference, as though fully set forth therein, each and

22   every one of the general allegations and the allegations contained in the First Cause of Action herein.

23        25.    Defendants, their "alternate entities", and each of them, sold the aforementioned

24   Defendants' Products and failed to adequately warn or instruct of the known and knowable dangers

25   and risks of the ordinary, intended, and foreseeable use of their products, which dangers and risks

26   would not have been, and were not, recognized by ordinary consumers of the products, including

27   Plaintiff ROBERT FINAMORE, and the lack of sufficient instructions and/or warnings was a

28   substantial factor in causing harm to Plaintiff ROBERT FINAMORE and others in Plaintiff's position

1   working with and in close proximity to such products.

2       26.    Defendants' Products were defective and unsafe for their intended purpose and
3   foreseeable use in that, when used, handled, installed, repaired, maintained, overhauled, removed,
4   sawed, chipped, hammered, mixed, scraped, sanded, swept, broken, "ripped out," or otherwise
5   disturbed, said products would result in the release, and therefore inhalation of, hazardous and
6   dangerous asbestos fibers by exposed person, including Plaintiff ROBERT FINAMORE. The defect
7   existed in all of said products when they left the possession of the Defendants, their "alternate
8   entities", and each of them.  At the time Defendants' Products were used by Plaintiff ROBERT
9   FINAMORE, and others in Plaintiff's position working with and in close proximity to such products,
10  the products were substantially the same as when they left the possession of the Defendants, their
11  "alternate entities", and each of them, and/or any changes made to the products after they left the
12  possession of Defendants, their "alternate entities", and each of them, were reasonably foreseeable to
13  Defendants, their "alternate entities", and each of them.  Defendants' asbestos and asbestos products
14  were used by Plaintiff ROBERT FINAMORE., and others in Plaintiff's position working with and in
15  close proximity to such products, in a way that was reasonably foreseeable to Defendants, and each of
16  them.  The defect in said products was a substantial factor in causing harm and personal injuries to
17  Plaintiff ROBERT FINAMORE, including malignant mesothelioma, while being used in a reasonably
18  foreseeable manner, thereby rendering said products defective, unsafe, and unreasonably dangerous for
19  their ordinary and intended use.

20      27.    As a direct and proximate result of the actions and conduct outlined herein, Defendants'
21  Products failed to perform as safely as an ordinary consumer would have expected in that Defendants'
22  products, and each of them, during their ordinary and intended use, and such hazardous exposures
23  lacked any perceptible qualities to the human body, yet they cause severe and fatal diseases, including
24  asbestosis, lung cancer, mesothelioma and other cancers in humans.  Plaintiffs further allege that
25  "exposed person", including Plaintiff ROBERT FINAMORE, were unaware of the harmful effects of
26  asbestos and further unaware of the harmful exposures to Defendants' Products when such exposures
27  occurred, and thus the failure of Defendants' products to perform as safely as Plaintiff ROBERT
28  FINAMORE had reason to expect was a substantial factor in causing his injuries.

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1       28.    As a direct and proximate result of the actions and conduct outlined herein, Plaintiff

2   ROBERT FINAMORE has suffered the injuries and damages alleged herein.

3       29.    Plaintiffs further allege that Defendants, their "alternate entities", and each of them,

4   also engaged in the following wrongful acts:

5       (a)    Defendants, their "alternate entities", and each of them, suppressed from all consumers,

6   including Plaintiff ROBERT FINAMORE, medical and scientific information concerning the health

7   hazards associated with inhalation of asbestos, including the substantial risk of injury or death

8   therefrom.  Although Defendants, and each of them, knew of the substantial risks associated with

9   exposure to asbestos, they willfully and knowingly concealed such information from the users of their

10   asbestos and/or asbestos-containing products in conscious disregard of the rights, safety and welfare of

11   "exposed person", including Plaintiff ROBERT FINAMORE.

12       (b)    Defendants, their "alternate entities", and each of them, belonged to, participated in,

13   and financially supported industry organizations, including but not limited to the Gypsum Association,

14   Asbestos Information Association, Industrial Hygiene Foundation and others, which, for and on behalf

15   of Defendants, their "alternate entities", and each of them, actively promoted the suppression of

16   information about the dangers of asbestos to users of the aforementioned products and materials,

17   thereby misleading Plaintiff ROBERT FINAMORE as to the safety of their products.  Through their

18   participation and association with such industry organizations, Defendants, and each of them,

19   knowingly and deliberately concealed and suppressed the true information regarding asbestos and its

20   dangers, and propagated misinformation intended to instill in users of Defendants' Products a false

21   security about the safety of their products.  The Dust Control Committee, which changed its name to

22   the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the

23   subject of dust control.  Discussions in this committee were held many times regarding the dangers

24   inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information

25   was suppressed from public dissemination from 1946 to a date unknown to Plaintiff ROBERT

26   FINAMORE at this time;

27       (c)    Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford

28   Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1  and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and

2  possessed medical and scientific information of the connection between the inhalation of asbestos

3  fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and

4  other industry organizations to all other Defendants, their "alternate entities", and each of them, herein.

5  Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, failed to provide

6  this information to consumers;

7      (d)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiff

8  ROBERT FINAMORE and others of the nature of said materials which were dangerous when

9  breathed and which could cause pathological effects without noticeable trauma, despite the fact that

10  Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to

11  disclose that said materials were dangerous and a threat to the health of persons coming into contact

12  therewith;

13      (e)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiff

14  ROBERT FINAMORE with information concerning adequate protective masks and other equipment

15  devised to be used when applying, mixing, installing and sanding the products of the Defendants, their

16  "alternate entities", and each of them, despite knowing that such protective measures were necessary,

17  and that they were under a duty to disclose that such materials were dangerous and would result in

18  injury to Plaintiff ROBERT FINAMORE and others applying and installing such material;

19      (f)     Defendants, their "alternate entities", and each of them, knew and failed to disclose that

20  Plaintiff ROBERT FINAMORE and anyone similarly situated, upon inhalation of asbestos would, in

21  time, have a substantial risk of developing irreversible conditions of pneumoconiosis, asbestosis,

22  mesothelioma and/or cancer;

23      (g)     Defendants, their "alternate entities", and each of them, failed to provide information of

24  the true nature of the hazards of asbestos materials and that exposure to these materials would cause

25  pathological effects without noticeable trauma to the public, including buyers, users, and physicians

26  employed by Plaintiff ROBERT FINAMORE so that said physicians could not examine, diagnose, and

27  treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their

28  "alternate entities", and each of them, were under a duty to so inform and said failure was misleading;

1  and

2    30. Defendants, their "alternate entities", and each of them, and their officers, directors, and

3  managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge

4  of, or should have known of, each of the acts set forth herein. Defendants, their "alternate entities",

5  and each of them, are liable for the oppressive and malicious acts of their "alternate entities", and each

6  of them, and each Defendant's officers, directors, and managing agents participated in, authorized,

7  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each

8  of their "alternate entities" as set forth herein.

9    31. The herein-described conduct of said Defendants, their "alternate entities", and each of

10  them, was and is willful, malicious, oppressive, outrageous, and in conscious disregard and

11  indifference to the safety and health of "exposed person," including Plaintiff ROBERT FINAMORE,

12  in that Defendants, and each of them, continued to manufacture, market and/or sell dangerous products

13  known to cause severe, permanent injuries and death, despite possessing knowledge of the substantial

14  hazards posed by use of their products, in order to continue to profit financially therefrom.

15  Defendants, their "alternate entities", and each of them, engaged in such conduct so despicable,

16  contemptible, base, vile, miserable, wretched and loathsome as to be looked down upon and despised

17  by ordinary people and justifies an award of punitive and exemplary damages pursuant to Civil Code

18  section 3294.  Plaintiffs, for the sake of example and by way of punishing said Defendants, seek

19  punitive damages according to proof.

20    32. Defendants, and each of them, engaged in conduct which was intended by Defendants,

21  and each of them, to cause injury to the Plaintiffs, and despicable conduct which was carried on by the

22  Defendants with a willful and conscious disregard of the rights or safety of others, including Plaintiff

23  ROBERT FINAMORE.

24    33. Defendants, and each of them, engaged in the despicable conduct described herein that

25  subjected persons, including Plaintiff ROBERT FINAMORE, to cruel and unjust hardship in the form

26  of severe, debilitating and fatal diseases like asbestosis, lung cancer and mesothelioma, in conscious

27  disregard of those persons' rights.

28    34. As a direct and proximate result of such intentional conduct by Defendants, their

1   "alternate entities", and each of them, Plaintiff ROBERT FINAMORE sustained the injuries and

2   damages alleged herein.

3        WHEREFORE, Plaintiffs pray for judgment against Defendants, and their "alternate entities",

4   and each of them, as hereinafter set forth.

5                              **THIRD CAUSE OF ACTION**

6                                    (Conspiracy)

7

8        AS AND FOR A FURTHER THIRD, SEPARATE, AND DISTINCT CAUSE OF ACTION
    FOR CONSPIRACY, PLAINTIFFS COMPLAIN OF DEFENDANTS, DOES 1-450, THEIR
9   "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

10       35.    Defendant **METROPOLITAN LIFE INSURANCE** (hereinafter "METROPOLITAN

11  LIFE") rendered substantial aid and assistance to the manufacturers of asbestos-containing products to

12  which Plaintiff ROBERT FINAMORE was exposed, and such assistance by Metropolitan Life aided

13  and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products

14  by such manufacturers which proximately caused Plaintiff ROBERT FINAMORE's illness, injuries,

15  and disabilities.

16       36.    In both conducting tests and in publishing their alleged results, **METROPOLITAN**

17  **LIFE** failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of

18  the health effects of asbestos. **METROPOLITAN LIFE** also caused to be published intentionally

19  false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

20       37.    Plaintiff ROBERT FINAMORE unwittingly but justifiably relied upon the

21  thoroughness of **METROPOLITAN LIFE's** tests and information dissemination, the results of which

22  Metropolitan Life published in leading medical journals.

23       38.    As a direct and proximate contributing result of **METROPOLITAN LIFE's** failures to

24  conduct or accurately publish adequate tests or disseminate accurate and truthful information, after

25  undertaking to do so: (i) the risk of harm to Plaintiff ROBERT FINAMORE from asbestos exposure

26  was increased, and (ii) Plaintiff ROBERT FINAMORE suffered the injuries described below.

27       39.    In failing to test fully and adequately for the adverse health effects from exposure to

28  asbestos; in delaying the publication of such results; and in falsely editing such results as were

                                          27

                **COMPLAINT FOR PERSONAL INJURY – ASBESTOS**

1    obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the

2    sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants

3    materially to understate the hazards of asbestos exposure, all for its own profit and gain,

4    **METROPOLITAN LIFE** acted recklessly, wantonly, and in calculated disregard for the welfare of

5    the general public, including Plaintiff ROBERT FINAMORE.

6                                    **FOURTH CAUSE OF ACTION**

7                                         (Loss of Consortium)

8         AS AND FOR A FURTHER FOURTH, SEPARATE, AND DISTINCT CAUSE OF ACTION

9    FOR LOSS OF CONSORTIUM, PLAINTIFF REBECCA FINAMORE COMPLAINS OF
     DEFENDANTS, DOES 1-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND

10   ALLEGES AS FOLLOWS:

11        40.    Plaintiff REBECCA FINAMORE incorporates by reference, each and every allegation

12   contained in the general allegations and in the First, Second and Third Causes of Action herein.

13        41.    Plaintiffs ROBERT FINAMORE and REBECCA FINAMORE were married January

14   10, 1982, and at all times relevant to this action were, and are now, husband and wife.

15        42.    Prior to Plaintiff ROBERT FINAMORE's injuries as alleged, he was able and did

16   perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, Plaintiff

17   ROBERT FINAMORE has been unable to perform the necessary duties as a spouse and the work and

18   services usually performed in the care, maintenance, and management of the family home, and he will

19   be unable to perform such work, service and duties in the future.  As a proximate result thereof,

20   REBECCA FINAMORE has been permanently deprived and will be deprived of the consortium of her

21   spouse, including the performance of duties, all to her damages, in an amount presently unknown but

22   which will be proved at the time of trial.

23        43.    Plaintiff REBECCA FINAMORE's discovery of this cause of her loss of consortium,

24   as herein alleged, first occurred within one year of the date this Complaint was filed.

25        44.    As a direct and proximate result of the acts of Defendants, their "alternate entities", and

26   each of them, and the severe injuries caused thereby to Plaintiff ROBERT FINAMORE as set forth in

27   this complaint, Plaintiff REBECCA FINAMORE has suffered, and for a long period of time will

28   continue to suffer, loss of consortium, including, but not limited to, loss of services, marital relations,

society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

45.    WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

Plaintiff ROBERT FINAMORE:

1.    For Plaintiff's general damages according to proof;

2.    For Plaintiff's loss of income, wages, and earning potential according to proof;

3.    For Plaintiff's medical and related expenses according to proof;

Plaintiff REBECCA FINAMORE:

4.    For Plaintiff's damages for loss of consortium and/or society according to proof;

Plaintiffs ROBERT FINAMORE AND REBECCA FINAMORE:

5.    For Plaintiffs' cost of suit herein;

6.    For exemplary or punitive damages according to proof;

7.    For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.

DATED: June 13, 2013                          SIMON GREENSTONE PANATIER BARTLETT, P.C.

By: _____
Jennifer L. Bartlett
Robert A. Green
Stuart J. Purdy
Tyson B. Gamble

Attorneys for Plaintiffs

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1

## DEMAND FOR JURY TRIAL

2     Plaintiffs hereby demand trial by jury as to all issues so triable.

3

4     DATED: _une 13_____, 2013          SIMON GREENSTONE PANATIER BARTLETT, P.C.

5

6                                        By: _____

7                                            Jennifer L. Bartlett
                                             Robert A. Green
8                                            Stuart J. Purdy
                                             Tyson B. Gamble

9                                        Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

30

1

## EXHIBIT "A"

2
Plaintiff ROBERT FINAMORE's exposure to asbestos and asbestos-containing products

3
occurred at various locations within the State of California, including, but not limited to:

4

| Employer | Location of Exposure | Job Title | Exposure Date(s) |
|---|---|---|---|
| US Navy | USS Pritchett (DD-561) San Diego, CA | Fireman, Machinist's Mate | 1967-1974 |
| | USS Oriskany (CV-34) | | |
| | USS Providence (CL-82/CLG-6), San Diego, CA San Francisco, CA | | |
| | USS Piedmont (AD-17) San Diego, CA | | |
| Liquid Oxygen Company | Livermore, CA | Welder | 1974-1979 |
| Western States Steel | Livermore, CA | Welder | 1979-1981 |
| McClellan AFB | Sacramento, CA | Aircraft Mechanic | 1981-1989 |
| Self | Various locations in California | Repairs and maintenance to personal and family vehicles | 1960's to 1980's |
| Self | Tracy, CA | Home remodeling to personal residence | 1970's |

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

31

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT "B"

Plaintiff ROBERT FINAMORE's exposure to Defendants' Products caused severe and permanent injury to Plaintiff ROBERT FINAMORE including, but not limited to, mesothelioma. Plaintiff was diagnosed with mesothelioma on or about April 8, 2013.

COMPLAINT FOR PERSONAL INJURY – ASBESTOS